UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tamara Tricas,

    Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 17-5374 (MJD/LIB)

Pine County,

    Defendant.

---

Philip G. Villaume and Jeffrey D. Schiek, Villaume & Schiek, P.A., Counsel for Plaintiff.

Ann R. Goering and Erin E. Benson, Ratwik, Roszak & Maloney, P.A., Counsel for Defendant.

---

This matter is before the Court on Defendant Pine County's Motion for Summary Judgment.

## I. Background

Plaintiff worked for Defendant Pine County (the "County") for over 24 years. (Comp. ¶ 4.) In 2003, the County Board appointed her the County Recorder. (Id.) She remained in that position until the County Recorder position was eliminated in December 2016. (Id.) At the time her employment was terminated, Plaintiff was over the age of 40. (Id.)

1

In July 2016, Plaintiff requested leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et. seq., in order to take her minor child to the Fraser Academy for treatment for Autism. (Id. ¶ 6.) Plaintiff planned to be absent one day per week for this purpose. Plaintiff's FMLA request was approved by Kelly Schroeder, Plaintiff's immediate supervisor, on July 29, 2016. (Schiek Aff. Ex. D.)

The County asserts that during the 2016 budget process, it faced a budget shortfall for 2017. (Goering Aff., Ex. 2 (Minke Dep. at 32); Ex. 9; Ex. 10.) The County's Administrator, David Minke, testified that the shortfall existed despite a 6.5% levy increase. (Id. Ex. 2 (Minke Dep. at 26).) The County requested a $100,000 reserve in the General Fund for the 2017 budget for unexpected expenses and cash flow. (Id. Ex. 3 (Ludwig Dep. at 20); Ex. 2 (Minke Dep. at 24).) While working on the 2017 budget, it was discovered in about September/October 2016 that the County would face a $500,000 deficit. (Id. Ex. 2 (Minke Dep. at 32).) Minke testified that to eliminate this deficit, the Board had to create a combination of spending cuts and revenue increases. (Id.) By November 2016, the Board came close to its target, with a General Fund balance of $94,205. (Id. Ex. 11, Ex. 2 (Minke Dep. at 32).) Later that month, Minke received information that health insurance expenses for the Sheriff's deputies

2

were higher than anticipated.  (Id. Ex. 12, Ex. 2 (Minke Dep. at 31-32).)  As a result, the County's reserve was almost completely eliminated.  (Id. Ex. 12.)

As a result, Minke requested the department heads to find additional cuts.  Minke looked to find $100,000 through staff cuts.  (Id. Ex. 2 (Minke Dep. at 33).)  He was also looking to make reductions that would not impact service to the public.  (Id. Ex. 2 (Minke Dep. at 50).)  The County had to make its budget decisions by December 8, 2016; the date its statutorily mandated Truth in Taxation meeting was scheduled – a date which could not be changed.  (Id. Ex. 2 (Minke Dep. at 34) and Minn. Stat. § 275.065, subdiv. 3(c).)

Schroeder discussed with Minke the option of eliminating the Recorder position held by Plaintiff.  (Id. Ex. 2 (Minke Dep. at 33).)  Schroeder then presented the potential savings associated with eliminating the Recorder position at the County's Personnel Committee meeting held on November 30, 2016.  (Id. Ex. 2 (Minke Dep. at 340); Ex. 13.)  Minke approved the proposal, stating the duties of the Recorder could be assigned to another worker and not decrease services to the public.  (Id. Ex. 2 (Minke Dep. at 52).)  Schroeder did not propose that other positions be eliminated.  (Id. Ex. 4 (Schroeder Dep. at 40).)

The County's Personnel Committee is made of up two County Commissioners, Chafee and Ludwig – who make recommendations to the entire Board. (Id. Ex. 4 (Schroeder Dep. at 55).) The Personnel Committee agreed with the recommendation to eliminate the Recorder position and the Board ultimately approved the elimination of the position at its December 7, 2016 meeting. (Id. Ex. 14; Ex. 4 (Schroeder Dep. at 60).) Eliminating the position resulted in a total savings of approximately $90,000, inclusive of her $63,000 salary, health insurance, other benefits, FICA and a 7.5% employer contribution to public pension contributions. (Id. Ex. 2 (Minke Dep. at 40-42).)

Plaintiff was notified on December 7, 2016 by Schroeder and the County's Human Resources Manager, Connie Mikrot, that her job had been eliminated effective December 14, 2016. (Id. Ex. 1 (Plaintiff Dep. at 68); Ex. 4 (Schroeder Dep. at 75); Ex. 15.) The County continued to pay Plaintiff her regular pay through December 30, 2016. (Id. Ex. 1 (Plaintiff Dep. at 68); Ex. 15.) The County did not hire anyone to replace Plaintiff; instead her supervisor, Kelly Schroeder, absorbed all of Plaintiff's duties. (Id. Ex. 1 (Plaintiff Dep. at 41); Ex. 4 (Schroeder Dep. at 11-12); Kylander Aff. at ¶6; Stumne Aff. at ¶ 6; Steward Aff. at ¶ 5; Fallon

Aff. at ¶¶ 8-9; Anderson Aff. at ¶ 5; Englund Aff. at ¶ 7; Christensen Aff. at ¶ 7; Benoit Aff. at ¶ 9; Houtsma Aff. at ¶ 10 and Kalb Aff. at ¶ 7).)

On November 21, 2017, Plaintiff served a state court Summons and Complaint on the County. In the Complaint, Plaintiff has asserted claims of age discrimination in violation of Minn. Stat. § 181.81, reprisal and interference in violation of the FMLA, and invasion of privacy in violation of state law. The County removed the action to this Court, asserting this Court has original jurisdiction over the FMLA claim.

## II. Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)). The party opposing summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**III.  Discussion**

**A.  FMLA Retaliation**

Plaintiff claims that the County eliminated her position in retaliation for her taking FMLA leave once per week in order to take her son to his medical appointments.[1]

The County argues that Plaintiff cannot establish a prima facie case of retaliation in violation of the FMLA because she has put forth no evidence of a causal connection between her taking FMLA leave and the elimination of her position. See Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1007 (8th Cir. 2012). To establish a causal link, Plaintiff must prove that the County's retaliatory motive played a part in the elimination of her job. Hite v. Vermeer

---

[1] In her Complaint, Plaintiff originally alleged that the County also retaliated against her for taking FMLA leave by writing her up for improper use of the County email system in September 2016, when other employees were not disciplined for the same conduct. Plaintiff later admitted that this corrective action actually took place prior to her taking leave – in November 2015. (Goering Aff., Ex. 1 (Plaintiff Dep. at 23); Ex. 7).)

Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006). Temporal proximity, standing alone, is generally insufficient to establish a causal connection. Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1091 (8th Cir. 2014).

The County asserts that Plaintiff has failed to produce any evidence that anyone on the County Board knew she requested FMLA leave at the time the Board decided to eliminate her position. Minke testified that he was unaware that Plaintiff was on FMLA leave at the time her position was eliminated. (Goering Aff., Ex. 2 (Minke Dep. at 49-50).) In addition, the fact that the County approved her request to work four 10-hour days, so she would not have to use up all her paid time off, demonstrates that the County was not hostile to Plaintiff taking FMLA leave. (Id. Ex. 1 (Plaintiff Dep. at 9, 59).)

It is Plaintiff's position that the evidence shows the key decisionmaker concerning the elimination of her position was her supervisor, Kelly Schroeder, and that Schroeder was well aware that Plaintiff had been taking FMLA leave at that time. Plaintiff further argues that Commissioner Ludwig testified that he voted to eliminate Plaintiff's position based on Schroeder's recommendation, and that Ludwig does not micromanage the department heads and gives their recommendations deference. (Schiek Aff. Ex. V (Ludwig Dep. at 34).) Thus,

7

Schroeder was responsible for Plaintiff's position being eliminated. See Qamhiyah v. Iowa State Univ. of Science and Tech., 566 F.3d 733, 742 (8th Cir. 2009) ("an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design.")

The Court finds that Plaintiff has established a prima facie case of FMLA retaliation by presenting evidence demonstrating a causal connection between taking FMLA leave and the elimination of her position. There is evidence that Plaintiff was taking FMLA leave when her position was eliminated, and that Schroeder knew or should have known that Plaintiff was taking FMLA leave when she recommended her position be eliminated. See Cooley v. East Tennessee Human Resource Agency, Inc., 243 F. Supp.3d 941, 948 (E.D. Tenn. 2017) (fact that plaintiff was terminated two weeks after taking FMLA leave sufficient to establish prima facie causation); Wierman v. Casey's General Store, 638 F.3d 984, 1000 (8th Cir. 2011) (evidence that plaintiff was terminated within one week of taking FMLA leave sufficient to establish prima facie case of causation).

Next, the County asserts it has provided a legitimate, non-retaliatory reason for eliminating Plaintiff's position, and that Plaintiff has failed to show this reason is pretextual. Plaintiff responds that when viewing the facts in the light most favorable to her, she has demonstrated genuine issues of fact as to whether the County's asserted reason for eliminating her job is pretextual. She argues that the County shifted its reasoning for eliminating her job; from financial issues to the fact that Plaintiff did not have enough work.

First, in its motion for summary judgment, the County claims that the reason her position was eliminated was because of a projected budget deficit. However, during his deposition, Commissioner Ludwig testified that Kelly Schroeder told him that Plaintiff did not have enough work – that she only worked about one hour per day. (Schiek Aff. Ex. V (Ludwig Dep. at 31).) Ludwig testified that he believed this was important because taxpayers should not have to pay for a position for which there wasn't enough work. (Id.) Plaintiff claims that Schroeder made the determination that Plaintiff did not have enough work based on one meeting with Plaintiff, and that Ludwig took Schroeder's claim for face value. (Id.) Plaintiff further asserts she was never given the opportunity to refute Schroeder's claim that she did not have enough

9

work. Also, Plaintiff notes that the Board approved pay raises for Pine County employees from September 2016 through December 2016. (Id. Ex. A (Mikrot Dep. at 43).)

Plaintiff further argues the County's asserted reasons for eliminating her job are pretextual for the additional reasons that she never had any major job performance issues, the timing of her FMLA leave, her position was the only position recommended to be eliminated while other less qualified people were not identified for termination, the County could have developed less drastic ways to save money, and of the approximate 150 positions under the General Fund, only Plaintiff's position was eliminated and she was the only employee under Schroeder that requested FMLA leave.

The County replies that Plaintiff's claim that she was the only employee that had requested FMLA leave is wrong and has provided evidence that four other employees were taking FMLA leave at the relevant time. (Koivisto Aff. ¶ 2.) It is not clear from the Koivisto Affidavit, however, whether any of these employees served under Schroeder.

The County further argues that Plaintiff misstates Ludwig's testimony regarding Plaintiff's job performance. Ludwig testified that Plaintiff's job

performance was not an issue. (Schiek Aff. Ex. V (Ludwig Dep. at 31).) The issue was whether there was enough work to justify the position. The County has submitted a number of affidavits in support of the contention that Plaintiff did not have enough work. (See, e.g., Kylander Aff. ¶ 3; Stumne Aff. ¶ 4; Fallon Aff. ¶ 6; Anderson Aff. ¶ 4; Houtsma Aff. ¶¶ 9, 10.)

Based on the evidence currently before it, the Court finds that Plaintiff has demonstrated there are genuine issues of material fact on the issue of pretext. While it appears undisputed that the County faced a budget deficit in 2016, there are fact questions surrounding the manner in which the decision to eliminate the Recorder position was made and the bases for that decision in light of the fact that Plaintiff continued to take FMLA leave at that time. Accordingly, the Court finds the issue of pretext should be presented to a jury.[2]

---

[2] To be clear, in finding genuine issues of fact exist as to pretext, the Court did not consider the draft memorandum that proposed adding a Senior Property Appraiser/Deputy Recorder position, in addition to eliminating the Recorder position. (Schiek Aff. Ex. X.) The County demonstrated that this was only a draft and that it was not presented to the Personnel Committee or the Board. (Minke Aff., at ¶ 3.) In addition, the County demonstrated that it did not hire any new employees in the Recorder's Office or the Assessor's Office at any time since Plaintiff's job was eliminated. (Goering Aff., Ex. 24 (Schroeder Dep. at 94-97).)

### B. FMLA Interference

Plaintiff alleges that the County's actions constitute FMLA interference. (Comp. ¶ 33.) The Eighth Circuit has held that an interference claim under the FMLA is one where "an employee [] claims the denial of a benefit to which he is entitled under the statute." Pulczinski, 691 F.3d at 1005. Here, there is no dispute that Plaintiff was granted the FMLA leave she requested. She instead claims that she suffered adverse employment actions because she took FMLA leave. See Stallings v. Hussmann Corp., 447 F.3d 1041 1051 (8th Cir. 2006) (affirming district court determination that plaintiff's FMLA interference claim was fundamentally a retaliation claim, and that dismissal of interference claim was appropriate). Accordingly, the Court finds that the County is entitled to summary judgment in its favor on this claim.

### C. Count I – Age Discrimination Under Minn. Stat. § 181.81

Plaintiff claims that the County violated Minn. Stat. § 181.81 by illegally terminating her employment because she was over the age of 40. (Comp. ¶¶ 18-23.) Minn. Stat. § 181.81, which addresses mandatory retirement age restrictions, provides: "It is unlawful for any private sector employer to refuse to hire or employ, or to discharge, dismiss, reduce in grade or position, or demote any

individual on the grounds that the individual has reached an age of less than 70 . . . " (emphasis added).

The County argues this claim must be dismissed because it is a public sector employer and the statute applies only to private sector employers. While Plaintiff could have brought a claim under the Minnesota Human Rights Act ("MHRA") against the County, Plaintiff did not do so. In addition, Section 181.81 is substantially different than the MHRA; the MHRA has significant procedural requirements and provides additional forms of relief, while Minn. Stat. § 181.81 has fewer procedural limits on a recovery and provides more limited relief. DeRoche v. All Am. Bottling Corp., 38 F. Supp. 2d 1102, 1108 (D. Minn. 1998) (noting that remedies under section 181.81 are limited to back pay or reinstatement, while remedies under the MHRA include punitive damages, treble damages, civil damages, and emotional distress damages). "By bringing a claim under section 181.81, a person does not circumvent the procedural requirements in chapter 363." Lecy v. Sage Co., 460 N.W.2d 102, 105 (Minn. Ct. App. 1990).

The County notes that Minn. Stat. § 181.81 previously applied to a public employer, but that the statue was amended in 1987 to apply only to private sector employers. See Act of May 28, 1987, ch. 284, art. 2 § 3, 1987 Minn. Laws.

Plaintiff responds that claims brought under the ADEA, MHRA and section 181.81 are analyzed in the same fashion, and that section 181.81 uses the definition of employer set forth in the MHRA, which defines employer as having more than one employee. Without addressing the express language in § 181.81 which states the statute applies only to "private sector employers," Plaintiff claims that public policy would favor eliminating all discrimination, whether the employer is public or private, and should allow her to amend her complaint to include an age discrimination claim under the MHRA. Plaintiff then argues the County violated Minn. Stat. § 181.81 by failing to post a mandatory notice that the mandatory retirement age is 70.

While courts have found that a plaintiff may simultaneously bring age discrimination claims under the MHRA and section 181.81 – no court has found that section 181.81 applies to a public employer after the statute was amended in 1987 to remove the language which defined employer as either public or private. The case Plaintiff cites to was issued before this amendment. See Strand v.

Special School Dist. No. 1 392 N.W.2d 881, 886-87 (Minn. 1986). Further, Plaintiff cites to the definition of employer set forth in Minn. Stat. § 181.171, which defines an employer as "any person having one or more employees in Minnesota and includes the state and any political subdivision of the state." The definition then sets forth which sections to which it applies, and Minn. Stat. § 181.81 is not one of the sections listed. Id. As Minn. Stat. § 181.81 clearly does not apply to public employers, this claim has no merit.

Even if Plaintiff were allowed to amend her complaint to add a claim for age discrimination in violation of the MHRA, such claim would fail on the merits. To show a prima facie case of age discrimination in a reduction in force, Plaintiff must show 1) she is less than 70 years of age; 2) she met the applicable job qualifications; 3) she suffered an adverse employment action; and 4) there is additional evidence that age was a factor in the employer's termination decision. Rahlf v. Mo-Tech Corp., Inc., 642 F.3d 633, 637 (8th Cir. 2011). The fact that a plaintiff's duties were assumed by a younger employee following a reduction in force "does not create an inference of age discrimination." Ward v. Int'l Paper Co., 509 F.3d 457, 462 (8th Cir. 2007). Plaintiff has produced no evidence, other than the fact that her duties were assumed by a younger employee, to show that

age was a factor in the decision to eliminate her position. In addition, there is no evidence in the record to suggest an animus based on age. Accordingly, the Court finds that the County is entitled to summary judgment on this claim.

### D. Invasion of Privacy

Minnesota recognizes three kinds of invasion of privacy claims: intrusion upon seclusion, appropriation and publication of private facts. Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 236 (Minn. 1998). To state a claim, a plaintiff must demonstrate that one "gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public." Bodah v. Lakeville Motor Express, Inc., 663 N.W.2d 550, 553 (Minn. 2003). "'Publicity' means that 'the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" Bodah, at 557 (adopting Restatement (Second) of Torts § 652D cmt. a). The disclosure of a private fact to one person, or a small group, is not an invasion of right to privacy. Tureen v. Equifax, Inc., 571 F.2d 411, 417 (8th Cir. 1978); CLD v. Wal-Mart Stores, Inc., 79 F. Supp.2d 1080, 1082 (D. Minn. 1999) (finding that an employer's disclosure of private

16

information to a few individuals not sufficient to state claim of tortious invasion of privacy). There is no liability for giving further publicity to what a plaintiff has already disclosed. Restatement (Second) of Torts § 652D, cmt. b.

An invasion of privacy claim of intrusion upon seclusion is defined as "one who intentionally intrudes, physically or otherwise, upon the solicitude of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001) (quoting Restatement (Second) of Torts, § 652(b)). "There is 'no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object.'" Id. (quoting cmt d.)

Based on the above law, the Court finds that Plaintiff's claim of invasion of privacy is without merit. Even accepting that Schroeder told two co-workers, such a disclosure does not state a claim for invasion of privacy. Bodah 663 N.W.2d at 557 ("absent dissemination to the public at large, the claimant's private persona has not been violated"); CLD, 79 F. Supp.2d at 1082 (D. Minn.

1999) (finding that an employer's disclosure of private information to a few individuals not sufficient to state claim of tortious invasion of privacy).

The record also demonstrates that Plaintiff admitted she told co-workers about her son's medical issues and appointments, albeit after she believed it was already common knowledge. (Goering Aff., Ex. 1 (Plaintiff Dep. at 118-119).) Such evidence diminishes her claim that the information being shared by Schroeder and others was "highly offensive." Plaintiff also admitted there is nothing more offensive about going to Fraser for treatment as compared to other treatments for her son. (<u>Id.</u> at 14-15, 118.) The Court further notes the record demonstrates that Plaintiff had previously publicized her son's medical condition (which at the time was a diagnosis of heavy metal toxicity, later changed to autism) and treatments when advertising for a public benefit to raise money for her son in 2012. (<u>Id.</u> at 17, 97; Ex. 17.)

**IT IS HEREBY ORDERED** that Defendant Pine County's Motion for Summary Judgment [Doc. No. 11] is GRANTED in part and DENIED in part as follows: the motion is DENIED as to Plaintiff's claim of FMLA retaliation and GRANTED with respect to the remaining claims of FMLA interference, Age Discrimination; and Invasion of Privacy.

Date: March 27, 2019

s/ Michael J. Davis
Michael J. Davis
United States District Court